IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MATTHEW "REESE" JARETT,

Plaintiff,

v.

CITY OF GARNETT, KANSAS, et al.,

Defendants.

Case No. 2:24-cv-02151-HLT-TJJ

## MEMORANDUM AND ORDER

Plaintiff Matthew "Reese" Jarett brings state and federal constitutional claims against several individuals, the City of Garnett, and the Anderson County, Kansas's Board of Commissioners.[1] Plaintiff claims that Defendants used a taser on him while he was asleep and arrested and imprisoned him even though he had done nothing wrong. Anderson County's Board and the individual defendants associated with it move to dismiss. Doc. 4. The City of Garnett and its associated defendants move for judgment on the pleadings. Doc. 29.

The Court dismisses Plaintiff's state constitutional claim because he does not specify what Kansas right Defendants violated and has not shown that he has a right of action under the Kansas Constitution. The Court also dismisses his federal constitutional claims (except his excessive force claim against Defendant David Harper-Head) because his broad, collective, and conclusory allegations do not plausibly allege a constitutional violation. Plaintiff's sole surviving claim is a federal constitutional claim under § 1983 for excessive force against Harper-Head in his individual

---

[1] It is somewhat unclear whether Plaintiff sues the County or the Board. *See* Doc. 1 at 1, 4. Anderson County can only be sued by naming its Board of Commissioners. K.S.A. § 19-105. The County did not move to dismiss on this basis and refers to the County as the Board throughout its briefing. But to the extent Plaintiff's complaint does not name the Board, amendment to substitute the Board would not change the outcome. Plaintiff fails to state a claim against the Board or the County for the same reasons.

capacity. Plaintiff plausibly alleges this claim, and qualified immunity does not shield Harper-Head on this record.

I.     BACKGROUND[2]

Plaintiff and four of his friends spent the night at 16 Links Drive, Garnett, Kansas on the evening of April 16, 2022 into April 17, 2022. Someone reported to law enforcement that a few of the young men were driving a golf cart on the course at the Garnett County Country Club. Law enforcement responded. One of the men ran from Officer Michael Baumgardner toward the home at 16 Links Drive. Law enforcement then obtained permission from the homeowners to enter the residence.

Anderson County "officers and deputies" went to the basement and found five male adults. Plaintiff was asleep on the couch. Officers tried to wake him, but he was nonresponsive. Officers were concerned that Plaintiff had alcohol poisoning, so they called EMS. Deputies Harper-Head and Hayden Seabolt continued to try to wake Plaintiff. Plaintiff did not respond to their commands. Harper-Head and Seabolt at one point tried to handcuff Plaintiff. Harper-Head eventually tased Plaintiff. Use of the taser woke Plaintiff. He was taken to the emergency room. Medical personnel treated him for emotional distress, anxiety, and injuries from the taser.

The Anderson County written report states, "Everyone was cooperative with the exception of one male who I would learn is Matthew Reese Jarett." Doc. 1 ¶ 17. The written report further states that Plaintiff "fit the description of the male who had run from [O]fficer Baumgardner." *Id.* at ¶ 23. It notes that Plaintiff's eyes were bloodshot and watery. And it notes that his blood alcohol

---

[2] The following facts are drawn from Plaintiff's complaint and are accepted as true for purposes of resolving the dispositive motions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

content was above the legal limit. His identifying information was "a hooded sweatshirt and shorts." *Id.* at ¶ 24.

Plaintiff was arrested, prosecuted, and jailed. But he was misidentified. Plaintiff was not on the golf course. He was inside 16 Links Drive all evening. Plaintiff alleges that law enforcement "fabricated false statements and actions attributed to Plaintiff, which never occurred" and alleges that "they lied to conceal the fabricated, false nature of this evidence and concealed the true nature of what occurred" in a manufactured police report. *Id.* at ¶ 26.

## II. STANDARD

One motion is under Rule 12(b)(6), and the other is under Rule 12(c). But the substantive standard is the same. *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). A complaint survives when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it contains sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

### III.   ANALYSIS

Plaintiff generally alleges three claims: (1) a claim under the Kansas Constitution, (2) a § 1983 excessive force claim, and (3) a § 1983 false imprisonment claim.[3] The Court quickly dispatches with Plaintiff's first claim. Plaintiff does not allege what state constitutional right Defendants violated or cite law establishing that a standalone claim even exists. *See Prager v. State*, 20 P.3d 39, 61, 63-64 (Kan. 2001) (explaining that Kansas has not recognized a claim for damages arising from violation of the Kansas Constitution); *see also Youngblood v. Qualls*, 308 F. Supp. 3d 1184, 1203 (D. Kan. 2018). The Court thus dismisses his claim under the Kansas Constitution against all defendants. This leaves the two federal constitutional claims under § 1983.

Plaintiff identifies five theories for his excessive-force claim:[4]

> (a) in the unreasonable use of force or use of excessive force; (b) in the acquiescence of the unreasonable use of force or use of excessive force; (c) in improperly investigating the circumstances surrounding the attack and use of unreasonable and/or excessive force upon the person of Plaintiff MATTHEW JARETT; (d) in recklessly developing, implementing, and carrying out policies, practices, or procedures which permitted the use of excessive force or the use of unreasonable force likely to result in serious bodily injury to the Plaintiff, and persons similarly situated; and (e) in conspiring to cover up the use of excessive force.

Doc. 1 at ¶ 53. And he identifies three theories for his false imprisonment claim:

> (a) Lack of probable cause to take Plaintiff into custody thereby depriving him of his liberty and due process rights; (b) in the acquiescence of the unreasonable use of force or use of excessive force in taking Plaintiff into custody; (c) in conspiring to cover up

---

[3]   Plaintiff's complaint also contains a § 1985 conspiracy claim (Count IV). But Plaintiff withdrew this claim. Doc. 25 at 14. To the extent that Plaintiff continues to try to allege conspiracy through his other claims, his effort is unavailing. Plaintiff fails to allege who agreed to what acts. Plaintiff's general allegations of conspiracy do not state a plausible claim or theory.

[4]   Plaintiff's complaint alleges excessive force in violation of the Fourth and Fourteenth Amendments. Defendants correctly point out that the alleged conduct falls under the Fourth Amendment because it was allegedly used in the context of an arrest. *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021).

>the lack of probable cause to make an arrest or to otherwise take Plaintiff into custody.

*Id.* ¶ 54.

Defendants attack both claims for being exceedingly general and vague. They note Plaintiff's relentless use of collective allegations, his failure to allege personal participation (as an officer/deputy or a supervisor), his inability to overcome qualified immunity, and his failure to identify any custom or policy justifying municipal liability. The Court sets out the basic legal principles for each of these attacks, and then analyzes the asserted allegations against each defendant.

    **A.**    **Legal Principles**

        **1.**    **Personal Participation**

Claims under § 1983 require more specificity because any constitutional violation must be traceable to a defendant's own actions. *Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013). A § 1983 claim requires specific allegations of personal participation by each defendant involved. *See Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011); *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). This means that a plaintiff must allege as to each individual defendant an action that he or she took that independently violated the plaintiff's constitutional rights.

        **2.**    **Qualified Immunity**

A defendant sued in his individual capacity for a constitutional violation may assert the defense of qualified immunity. Once a defendant asserts this defense, the plaintiff bears the burden to show that (1) the defendant violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the conduct at issue. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

### 3. Supervisory Liability

A plaintiff cannot establish supervisory liability merely by alleging that the defendant was in charge of a person who committed the alleged constitutional violation. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). A plaintiff must first establish that the supervisor's subordinates violated the plaintiff's federal rights. *Id*. And the plaintiff must also allege an "affirmative link between the supervisor's conduct and the violation." *Id*. A plaintiff may demonstrate such a connection by establishing that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id*. at 1199.

### 4. Municipal Liability

A municipality can only be held liable under 42 U.S.C. § 1983 for the actions of its employees when the action is taken pursuant to the municipality's "official policy," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)), or for acts it has sanctioned or ordered, *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (citing *Pembaur*, 475 U.S. at 480). This is because a municipality cannot be held liable simply under a theory of respondeat superior. *Pembaur*, 475 U.S. at 478; *see also Monell*, 436 U.S. at 694. Rather, a plaintiff must plead a plausible claim under the following elements to sue a municipality under § 1983 for employee actions: (1) that there was an official policy or custom, (2) that caused a constitutional violation, and (3) that the policy or custom was enacted or maintained with deliberate indifference toward the potential constitutional

injury. *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013)).

      **B.**      **Defendant-By-Defendant Analysis**

The Court next recounts Plaintiff's allegations pertaining to each defendant and evaluates whether they plausibly state a claim for excessive force or false imprisonment under the applicable legal principles.[5]

      **1.**      **Officer Polster**

This is Plaintiff's sole allegation against Polster: He is an officer with the Garnett Police Department. This allegation is plainly insufficient to state a claim for excessive force or false imprisonment. And it also does not overcome the first prong of qualified immunity. The Court dismisses Plaintiff's claims against Polster.

      **2.**      **Officer Baumgardner**

Plaintiff alleges that Baumgardner is an officer with the Garnett Police Department. One of the young men ran from him on the golf course. Baumgardner later "touched [Plaintiff] and told him to get up . . . ." Doc. 1 at ¶ 19. And the Anderson County Report "lists that [P]laintiff 'fit the description of the male who had run from [O]fficer Baumgardner.'" *Id.* ¶ 23. These allegations do not state a claim for excessive force. Plaintiff does not provide any details about how Baumgardner touched Plaintiff. And merely touching Plaintiff is not enough.[6] These allegations also do not state

---

[5] Plaintiff ambiguously sues several of the individuals "both in [their] individual capacity." It is unclear to the Court what this means. Plaintiff appears to sue Harper-Head, Seabolt, Baumgardner, and Scott Polster in both their individual and official capacities. But Plaintiff has also sued their employers, making the official capacity claims duplicative of those against the County and City. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The Court therefore dismisses all official-capacity claims against the individual defendants as redundant. *See Smith v. City of Lawrence, Kan.*, 2020 WL 3452992, at *5 n.8 (D. Kan. 2020).

[6] Plaintiff also claims that "Defendants, collectively and individually" acquiesced in the unreasonable use of force or use of excessive force. Plaintiff may be trying to allege that Baumgardner (and all other individual defendants) failed to intervene. But Plaintiff's broad and categorical allegations are insufficient to allege personal participation on the part of Baumgardner or anyone else present in the basement. Plaintiff does not allege, for example, that one deputy or officer yelled "Taser," letting the others present know it was being used. There are no allegations

a claim for false imprisonment.[7] Whoever arrested Plaintiff may have used Baumgardner's description to identify Plaintiff. But there is no allegation that the description was incorrect. Plaintiff does not even allege that he was not wearing a hooded sweatshirt and shorts, as described by Baumgardner. Plaintiff fails to plausibly allege that Baumgardner participated in any constitutional violations. Baumgardner is also shielded by qualified immunity because these allegations do not overcome the first prong.

### 3. Deputy Seabolt

Plaintiff alleges that Seabolt is a deputy with the Anderson County Sheriff's Department and that Seabolt attempted to wake and handcuff Plaintiff with Harper-Head.

Plaintiff alleges that the handcuffing constituted excessive force. But he does not allege that Seabolt's actions were unusually rough, the handcuffs were too tight, Seabolt ignored his pleas about the handcuffs hurting, or that he was treated for any pain or injury from the handcuffs. A claim for excessive force based on handcuffing requires more than *de minimis* injury to reach the level of a constitutional violation. *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). Plaintiff's allegations do not plausibly allege more than *de minimis* injury.

---

suggesting that others in the room had an opportunity to see Harper-Head draw his taser, prepare to use it, or to otherwise intervene. *See Vondrak v. City of Las* Cruces, 535 F.3d 1198, 1210 (10th Cir. 2008). And Plaintiff doesn't even allege specifically which officers and deputies were in the room. The Court realizes that Plaintiff claims to have been asleep or unconscious at this time. But, on the other hand, Plaintiff does allege that other male adults were in the basement. It seems that Plaintiff's friends would have witnessed the event and been able to provide details, even assuming Plaintiff remained asleep the entire time.

[7] A warrantless arrest not supported by probable cause violates the Fourth Amendment. *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008). Plaintiff mentions the term "probable cause" twice in his complaint, in paragraph 54. Once again, the allegation refers to "all Defendants." But a conclusory statement that "Defendants" lacked probable cause is insufficient. Plaintiff does not allege who made the arrest or who wrote the reports. It is unclear to the Court who took Plaintiff into custody. Plaintiff simply alleges in a conclusory manner that law enforcement lied and falsified reports without attaching the reports or specifying what parts are untrue. His allegations fail to state a plausible claim against Baumgardner or any other defendant.

Plaintiff seems to assume that the handcuffs were excessive force because he should not have been arrested at all. But this is a false arrest claim, not an excessive force claim.[8] *See id.* at 1127 (noting the distinction between excessive force claims and false arrest claims).

As for the false arrest or false imprisonment claim, Plaintiff also fails to plausibly allege it as to Seabolt. Plaintiff does not allege that Seabolt arrested him or wrote the reports. The only allegations naming Seabolt are that he tried to wake and handcuff Plaintiff. These allegations do not plausibly state a constitutional violation of any kind. This shortcoming also means that Plaintiff does not overcome the first prong of qualified immunity.

### 4. Deputy Harper-Head

Plaintiff alleges that Harper-Head is a deputy with the Anderson County Sheriff's Department. Harper-Head attempted to wake and handcuff Plaintiff with Seabolt. Plaintiff claims that Harper-Head has been reprimanded before for using excessive force through a taser. And he alleges that "Plaintiff Jarett was tased by defendant Harper Head." *Id*. at 9 ¶ 32. The Court has already explained why Plaintiff's allegations about the attempts to wake and handcuff him fail to plausibly state a constitutional violation because there are no details about how they attempted to wake him or any allegations suggesting more than *de minimis* injury from the handcuffing. The Court thus turns directly to Harper-Head's use of the taser.[9]

Courts evaluate several factors to determine whether force is constitutionally permissible: (1) the crime's severity; (2) any threat the suspect poses to the officers' safety or others' safety;

---

[8] The Court also questions the merits of Plaintiff's failure-to-investigate theory. Law enforcement is entitled to rely on information from other officers. *Oliver v. Woods*, 209 F.3d 1179, 1190-91 (10th Cir. 2000). Officers need not cross-examine their fellow officers about the reliability of information when they often must act swiftly. *United States v. Hensley*, 469 U.S. 221, 231 (1985).

[9] Plaintiff's complaint only specifies that one defendant, Harper-Head, used the taser. Plaintiff has not explained how any other member of law enforcement was involved in use of the taser. He does not allege that he was tased multiple times or from multiple directions. He simply alleges no other facts against any other individual about use of the taser. Harper-Head is therefore the only defendant whose use of the taser can be evaluated.

and (3) whether the suspect is actively resisting rest or attempting to flee. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Here, Plaintiff alleges that officers responded to a report of a few of the young men driving a golf cart on the country club golf course and eventually went to 16 Links Drive and got permission to enter. Harper-Head tased Plaintiff while Plaintiff was unresponsive, posed no threat to Harper-Head or others, and was not actively resisting arrest or trying to flee. Plaintiff also alleges that he was treated in the emergency room for injuries from the taser. Doc. 1 at 9 ¶ 28. These allegations are sufficient to allege a constitutional violation with respect to use of the taser. *See, e.g.*, *Poemoceah v. Morton Cnty., N.D.*, 2024 WL 4282613, at *3 (8th Cir. 2024) (citing another Eighth Circuit case for the premise that it has "held time and again that, if a person is not suspected of a serious crime, is not threatening anyone, and is neither fleeing nor resisting arrest, then it is unreasonable for an officer to use more than *de minimis* force against him").

Harper-Head asserts qualified immunity. Plaintiff has alleged a plausible constitutional violation sufficient to overcome the first prong. The Court therefore turns to the "clearly-established" prong. *See al-Kidd*, 563 U.S. at 735. A right is "clearly established" for qualified-immunity purposes where it is "sufficiently clear that every reasonable official would have understood" his conduct to have violated that right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation and internal quotations omitted). Courts do not require a case "directly on point." *al-Kidd*, 563 U.S. at 741. But the plaintiff must identify existing precedent that places the constitutional question "beyond debate." *Id.* The precedent "must be 'particularized' to the facts of the case" before the court. *White v. Pauly*, 580 U.S. 73, 79 (2017). But "officials committing outrageous, yet [unique], constitutional violations ought not to shield their behavior behind qualified immunity

simply because another official has not previously had the audacity to commit a similar transgression." *James v. Hunt*, 410 F.3d 1221, 1230 (10th Cir. 2005).

Plaintiff claims that Harper-Head woke him up by tasing him while he was lying down without a weapon in a private home. Plaintiff cites no case with similar facts, but argues that Harper-Head's conduct was so outrageous that the constitutional question is beyond debate. The Court agrees that using a taser as an alarm clock in a private home on a unresponsive, non-combative, unarmed, sleeping individual who came to law enforcement's attention based on nonviolent reports of riding a golf-cart on a golf course at night and then dropping a beer can while running away as alleged is sufficiently outrageous to overcome qualified immunity on this record. *See Est. of Booker v. Gomez*, 745 F.3d 405, 424 (10th Cir. 2014) (noting that Tenth Circuit authority provides that using a taser to control a suspect is excessive when there is no reason to believe that a lesser amount of force would be ineffective). The record may change in discovery, but the Court must accept as true Plaintiff's allegations at this stage. On this record, Harper-Head is not entitled to qualified immunity for waking Plaintiff with a taser.

### 5. Commissioners Les McGhee, Anthony "Spike" Mersman, and David Pracht

Plaintiff only references McGhee, Mersman, and Pracht in the description of parties. They are Commissioners of the Board of County Commissioners. As with Polster, this allegation is wholly inadequate to state a claim for excessive force or false imprisonment. Plaintiff does not even allege that the Commissioners were present or had any knowledge of the incident. The Court dismisses them for failure to plausibly allege their personal participation in any constitutional violation. And they are also entitled to qualified immunity because Plaintiff does not overcome the first prong.

### 6. Police Chief Kurt King

Plaintiff does not allege that Chief King was present at any point during the event or personally took actions against Plaintiff. He only asserts that King is liable as a policy-making official. But the Court has held that Plaintiff fails to state a constitutional violation against the City police officers. A supervisor cannot be liable for failing to supervise or for implementing ineffective policies where there is no underlying constitutional violation. *Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty., Okla.*, 978 F.3d 1165, 1174-75 (10th Cir. 2020). This also entitles him to qualified immunity under the first prong. The claims against King are dismissed.

### 7. Sheriff Vernon Valentine

Plaintiff also seeks to hold Sheriff Valentine liable as a policy-making official. He alleges that the decisions of Valentine and "officials of the County of Anderson, Kansas" represent the policy of Anderson County. Valentine and "those same officials" condoned the use of "less lethal" weapons against Plaintiff and others. *Id.* at 9 ¶ 33. They are aware of the "continuous and indiscriminate use of 'less lethal' weapons against individuals" and have failed to effectively train officers or implement policies, procedures, and directives relating to the permissible use of less lethal weapons. *Id.* at 10 ¶ 33. He does not allege that Valentine was physically present during the incident.

Plaintiff fails to assert any specific facts connecting Valentine's actions or inactions and Harper-Head's use of the taser. Plaintiff makes the vague and conclusory statement that Valentine implemented (or didn't implement) policies and procedures. He does not allege that Harper-Head was acting pursuant to those policies. And Plaintiff doesn't identify what the policies and procedures were or identify what training was offered or not offered. Plaintiff also doesn't allege any facts about Valentine's state of mind. He asserts that Valentine knew of the continuous and

indiscriminate use of less-lethal weapons. But this doesn't mean that Valentine knew that deputies were using tasers inappropriately or with conscious disregard to the rights of citizens. Indeed, Plaintiff provides no facts of how Valentine knew of the continuous and indiscriminate use or when else less-lethal weapons had been used improperly. For these reasons, the Court determines that Valentine is entitled to dismissal of Plaintiff's claim for supervisory liability against him. He is likewise shielded by qualified immunity.

### 8. City of Garnett

Plaintiff has not stated a constitutional violation against a City employee. The City therefore cannot be liable. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). The Court dismisses the § 1983 claims against the City.

### 9. Anderson County

Plaintiff generally alleges that the Sheriff's Department (through Valentine in his official capacity) has inadequate policies relating to the use of less-lethal weapons.[10] Plaintiff also alleges that "Defendant Harper-Head has a history of being reprimanded for use of excessive force, particularly regarding a taser." Doc. 1 at 9 ¶ 31. Apart from the woeful lack of details concerning the alleged use of excessive force and reprimand (e.g., when, circumstances of force, why reprimanded, reprimanded by whom), this allegation suggests that Harper-Head's actions were

---

[10] The County provided legal authority showing that under Kansas law, the Board of County Commissioners does not control or make policies or procedures for the Sheriff's Office. *See Bd. of Cnty. Comm'rs of Cnty. of Lincoln v. Nielander*, 62 P.3d 247 (Kan. 2003); *see also Wilson v. Sedgwick County Bd. of Cnty. Comm'rs*, 2009 WL 2850326, at *4 (D. Kan. 2006). Plaintiff offers no response to this argument. But Kansas law also provides that the proper way to sue for the actions of the Sheriff's Office is to sue the Board of County Commissioners. *See* Kan. Stat. Ann. § 19-105; *Appleby v. Bd. of Cnty. Comm'rs of Douglas Cnty.*, 2018 WL 3659395, at *13 (D. Kan. 2018). The Court therefore assumes that policies and procedures of the Sheriff's Office are relevant to the potential municipal liability of the County via the Board. *Cf. Bledsoe v. Jefferson Cnty. Bd' of Comm'rs*, 501 F. Supp. 3d 1059, 1144 (D. Kan. 2020), *rev'd in part on other grounds sub nom.*, *Bledsoe v. Carreno*, 53 F.4th 589 (10th Cir. 2022) (declining to resolve who should be named in a suit against a municipality when a sheriff, a county officer, has independent authority).

<u>against</u> policy, not pursuant to it. This cuts against any policy or custom by Anderson County of allowing the unmitigated use of tasers.

This inconsistency aside, Plaintiff fails to plausibly allege a custom, policy, or procedure. Plaintiff's allegations about a policy (or lack thereof) are conclusory. And he does not allege deliberate indifference on the part of the County. A plaintiff may plead deliberate indifference by alleging "[a] pattern of similar constitutional violations." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). An isolated instance of excessive force, on the other hand, is insufficient to plead a constitutional violation arising from a municipality's failure to train or implement effective policies. *See Cowdrey v. City of Eastborough*, 730 F.2d 1376, 1379 (10th Cir. 1984).

Plaintiff alleges that Valentine has "knowledge of both the continuous and indiscriminate use of 'less lethal' weapons against individuals." Doc. 1 at 10 ¶ 33. And he alleges that Harper-Head has been reprimanded before for use of a taser. But, as already noted, Plaintiff has not provided facts about other incidents or reprimand. This is insufficient to plead a widespread practice that would be "so permanent and well settled as to constitute a custom or usage with the force of law." *Bledsoe*, 501 F. Supp. 3d at 1147 *rev'd in part on other grounds sub nom.*, *Bledsoe*, 53 F.4th 589.

Plaintiff fails to plausibly allege that the County must be held responsible for the actions of its employee based on municipal liability. The Court dismisses the claims against the County.

IV. **REQUEST TO AMEND**

Plaintiff requests leave to amend his Complaint to provide additional facts if the Court determines that his allegations are insufficient. Docs. 25 at 15; 34 at 1-2, 16. This is not the proper way to request leave to amend under the federal or local rules. Fed. R. Civ. P. 15; D. Kan. Rule 15.1. The Court ordinarily will not grant leave to amend in absence of a formal motion because "a

bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based." *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 706 (10th Cir. 2014). Plaintiff had the opportunity to amend as of right instead of responding to the Anderson County Defendants' motion to dismiss. Plaintiff chose instead to respond even though the Anderson County Defendants challenged Plaintiff's lack of specific factual allegations. And Plaintiff does not identify any facts in his briefs that could be added to his complaint if granted leave to amend.

Plaintiff's request also fails to comply with D. Kan. Rule 15.1(a), which in and of itself is sufficient grounds to deny the request. Rewarding this half-hearted method of amendment would promote a "wait-and-see" approach to dispositive motion practice and would convert the early dispositive motions to a trial run. This is inefficient and unfair to Defendants and inefficient for the Court. The Court therefore denies Plaintiff's request.

## V. CONCLUSION

The Court dismisses all claims except the § 1983 claim against Harper-Head for excessive force via use of a taser. Dismissal is with prejudice for the following reasons. Plaintiff fails to overcome, or even meaningfully attempt to overcome, claims of qualified immunity by the individual defendants. Plaintiff has likewise made little if any attempt to establish supervisory liability for Sheriff Valentine or Police Chief King or *Monell* liability against the City and County. Plaintiff has failed to state a plausible claim against anyone but Harper-Head. This is true even though Plaintiff could have filed an amended pleading after the Anderson County Defendants moved to dismiss or properly moved for leave to amend after the City's motion. Plaintiff did not try to correct the above deficiencies via either avenue. The Court will sometimes dismiss deficient

pleadings without prejudice where it appears the problems can be addressed in a subsequent pleading. But Plaintiff has not shown an ability to do so and instead made belated half-hearted efforts to seek leave to amend within his briefs without even identifying the facts to be added. Dismissal with prejudice is therefore appropriate. *See Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 132-33 (D.C. Cir. 2012) (Kavanaugh, J., concurring) (explaining that dismissal under Rule 12(b)(6) is generally with prejudice unless stated otherwise and that opportunities to amend under Rule 15 in response to motions to dismiss provide a fair opportunity for a plaintiff to avoid such a result).

THE COURT THEREFORE ORDERS that the County Defendants' motion to dismiss (Doc. 4) is GRANTED IN PART AND DENIED IN PART. The City Defendants' motion for judgment on the pleadings (Doc. 29) is GRANTED. The § 1983 excessive force claim against Harper-Head for use of the taser remains viable. All other claims against all defendants are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: October 1, 2024                                 /s/ *Holly L. Teeter*
                                                                                   HOLLY L. TEETER
                                                                                   UNITED STATES DISTRICT JUDGE